**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| **CODY LEITZMAN, On behalf of** | ) | |
| **himself and all others similarly situated,** | ) | |
| | ) | **1:20-cv-01055-SEB-DML** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Judge Barker** |
| | ) | **Magistrate Judge Lynch** |
| **U.S. BANK, N.A.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**PLAINTIFF'S AGREED MOTION FOR ORDER**
**DIRECTING NOTICE TO THE SETTLEMENT CLASS**

David M. Marco
Larry P. Smith
**SMITHMARCO PC**
55 W Monroe Street, Suite 1200
Chicago, IL 60603
Tel: (312) 546-6539
Fax: (888) 418-1277
dmarco@smithmarco.com
lsmith@smithmarco.com

*Attorneys for Plaintiff and the Settlement Class*

## <u>TABLE OF CONTENTS</u>

I.   INTRODUCTION.................................................................................................... 4

II.  NATURE AND HISTORY OF THE LITIGATION ..................................................... 4

III. NATURE OF THE SETTLEMENT .......................................................................... 6

    A.   The Settlement Class. ..................................................................................... 6

    B.   Settlement Benefits. ....................................................................................... 7

    C.   Costs of Notice. .............................................................................................. 7

    D.   Individual Settlement and Service Award for Class Representative................ 7

    E.   Attorneys' Fees and Costs. ............................................................................. 8

    F.   Settlement Notice. .......................................................................................... 8

    G.   Release. ........................................................................................................... 9

IV.  ARGUMENT IN SUPPORT OF DIRECTING NOTICE TO THE CLASS ............. 9

    A.   The Court Will Likely Be Able to Approve the Settlement Agreement Because It Is Fair, Reasonable and Adequate. ............................................................. 11

        1.   Plaintiff and Class Counsel Have Adequately Represented the Class. ............ 12

        2.   The Settlement Agreement is the Result of Engaged, Arms-Length Negotiations Overseen by an Experienced Mediator. ............................................................. 13

        3.   The Settlement Provides Substantial Relief for Settlement Class Members.... 14

        4.   The Settlement Agreement is a Preferable Alternative to the Risks Each Party Would Face Through Continued Litigation. ......................................................... 15

        5.   The Proposed Award of Attorney's Fees Is Fair and Reasonable.................... 16

        6.   The Method of Providing Relief Will be Effective. ......................................... 17

        7.   The Settlement Treats All Settlement Class Members Fairly. ......................... 17

**B.** **The Class Meets the Requirements for Rule 23(a) for Certification.** .............. 18

    **1.** The Settlement Class is Sufficiently Numerous. ................................................. 19

    **2.** There are Questions of Law and Fact That Are Common to the Class. ........... 20

    **3.** Plaintiff's Claim is Typical of the Claims of the Class. ................................... 21

    **4.** Plaintiff and Plaintiff's Counsel Will Fairly and Adequately Represent and Protect the Interests of the Class. ........................................................................... 22

**C.** **The Class Meets the Requirements for Rule 23(b) for Certification.** .............. 23

    **1.** Common Questions of Law and Fact Predominate Over Individual Ones. ..... 23

    **2.** A Class Action is the Superior Method for Resolving Class Members' Claims. 24

**D.** **The Effectiveness of the Proposed Notice.** ........................................................... 25

**E.** **Scheduling a Final Approval Hearing is Appropriate.** ...................................... 26

**V.** **CONCLUSION** ............................................................................................................ 27

## I.   INTRODUCTION

Plaintiff, Cody Leitzman, by counsel, submits this motion for order directing notice of a proposed settlement in this class action case to members of the proposed class.[1]   A copy of the executed Class Action Settlement Agreement ("Agreement")[2] is attached hereto as **Appendix I**.

By this motion, Plaintiff respectfully requests this Court enter an Order: (i) finding that it will likely be able to approve the proposed settlement under Fed. R. Civ. P. 23(e)(2), as amended, and certify the proposed Settlement Class for purposes of judgment on the Settlement; (ii) approving the form, content, and method of delivering notice to the Class as set out in the Agreement; and, (iii) scheduling a final approval hearing.

## II.   NATURE AND HISTORY OF THE LITIGATION

This consumer class action is predicated on an alleged violation by Defendant, U.S. Bank, N.A., of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*

Congress enacted the Fair Credit Reporting Act ("FCRA") in 1970 to protect consumer privacy by requiring consumer reporting agencies to ensure the accuracy of the information contained in credit reports and, at issue in this case, to limit the furnishing of those reports to statutorily enumerated purposes only.  *See TRW Inc., v. Andrews,* 534 U.S. 19, 23 (2001).

The FCRA was created in response to "concerns about corporations' increasingly sophisticated use of consumers' personal information in making credit and other decisions." *Syed v. M-I, LLC et al.,* 846 F.3d 1034, 1037 (9th Cir. 2017) (citing the FCRA, *Pub.L.* 91-508, Section 602, 84 Stat. 1114, 1128).  *See also,  United States v. Bormes*, 568 U.S. 6, 7 (2012) (The Fair

---

[1] This motion reflects amendments to Fed. R. Civ. P. 23 which took effect on December 1, 2018.  The amendments clarified the requirements for court review and approval of class action settlements.  Among other changes, the concept of "preliminary approval" and an initial, conditional certification of the settlement class(es) was replaced with a finding that "giving notice is justified by the parties' showing that the court will likely be able" to give approval to the settlement and certify the settlement class(es) by the time of the final approval hearing.  Fed. R. Civ. P. 23(e)(1)(B).

[2] Capitalized terms in this Memorandum shall have the same meaning as set forth in the Agreement.

Credit Reporting Act has as one of its purposes to "protect consumer privacy" (quotation and citation omitted)); *Cole v. U.S. Capital,* 389 F.3d 719, 723 (7th Cir. 2004) ("In [§1681] Congress made it clear that the FCRA is designed to preserve the consumer's privacy in the information maintained by consumer reporting agencies.")

The present case is a privacy case brought pursuant to the "permissible purpose" provisions of the FCRA, delineated at 15 U.S.C. § 1681b, which governs who can access consumer report information from credit reporting agencies and for what purpose.   To that end, the FCRA enumerates certain "permissible purposes" for accessing credit reports.

The present lawsuit, which was filed on April 5, 2020, alleged that Defendant impermissibly obtained consumer reports pertaining to consumers that had obtained a bankruptcy discharge of any secured obligation that they owed to Defendant and after Defendant had regained legal possession of any real property that had been security for said obligation.   Defendant filed its Answer to the Class Action Complaint on May 20, 2020.  (ECF # 10).

On June 22, 2020, the Court entered a Case Management Plan, (ECF # 19), and the parties proceeded with written discovery.  Plaintiff promptly served detailed written discovery requests upon Defendant; Defendant responded to Plaintiff's discovery requests in September 2020. Thereafter the parties engaged in discovery conferences to discuss, *inter alia*, the number of Defendant's customers about whom Defendant had obtained a consumer report, ostensibly without a permissible purpose.  After completing its investigation, on December 23, 2020, Defendant apprised Plaintiff that it had identified 2,582 of its customers for which Defendant had procured a consumer report after the customer had received a bankruptcy discharge of their financial obligation to Defendant and after they had surrendered the property that had served as the security interest for the obligation or after a foreclosure of the property had been completed.

On January 13, 2021, the parties filed a Joint Motion to Stay Proceedings (ECF # 36) to allow the parties to direct resources to a possible settlement and to proceed with mediation. The motion to stay was granted by the Court. (ECF # 37). After engaging in considerable negotiations prior to mediation, the parties engaged in a full-day mediation with James R. Betts, a highly experienced private mediator with substantial experience resolving FCRA class action cases. At the conclusion of the session, the parties reached an agreement in principle to settle, including a written term sheet, which formed the basis of the Agreement. Further documentation of the detailed terms and conditions of the parties' settlement was negotiated, requiring the parties to expend additional time and resources before finally arriving at an agreement.

### III.   <u>NATURE OF THE SETTLEMENT</u>

Class Representative, Cody Leitzman, and Defendant, U.S. Bank, N.A., have agreed, subject to this Court's approval, to a settlement of this litigation on a class-wide basis. The terms of the parties Agreement are set forth in the document attached hereto as **<u>Appendix I</u>**. The Agreement is fair, reasonable, and sound considering the relevant facts, the applicable law, and the benefits conferred by the settlement to the Class and the limited release provided.

#### A.  <u>The Settlement Class.</u>

The Settlement Class is defined in the Agreement (Appendix I, p.8, ¶32) as:

*All persons about whom, during the two (2) year period prior to the filing of the Complaint, Defendant obtained a consumer report after that consumer had obtained a bankruptcy discharge of any secured obligation such consumer owed to Defendant, and after Defendant regained legal possession of the real property securing such obligation.*

The discovery exchanged in this matter indicates that there are 2,582 individuals who meet the above class definition and are, therefore, members of the putative class (Appendix I, p.4, ¶3).

### B.  Settlement Benefits.

Defendant has agreed to create a settlement fund of $450,000, which shall be used solely to pay Settlement Class Members on an equal basis.  (Appendix I, p.8, ¶34).  Assuming no Class Member opts out of the Class Settlement, each Class Member will receive approximately $175, which exceeds myriad other class action settlements for an alleged violation of the privacy provisions of the FCRA.  Given the risks associated with proceeding with a contested motion for class certification, defending a likely motion for summary judgment and proceeding forward to trial, Class Counsel determined, after extensive negotiations both prior to and at mediation with an experienced FCRA mediator, that the settlement is fair, reasonable, and adequate for the Class.

### C.  Costs of Notice.

The parties have agreed to retain the services of Rust Consulting ("Rust"), a professional, third party, class action settlement administrator.  Rust will administer the notice and payment of the monetary relief as delineated above.  (Appendix I, p.7, ¶29).

In addition to the monetary relief to the Class, separate and distinct from the Settlement Payment, Defendant has agreed to pay all of the costs of notice and settlement administration and the costs associated with complying with the Class Action Fairness Act ("CAFA"), including the items required by 28 U.S.C. § 1715(b) to be sent to the appropriate officials, as required by CAFA. (Appendix I, p.7, ¶28).

### D.  Individual Settlement and Service Award for Class Representative.

Subject to Court approval, the parties have agreed that the Class Representative, shall receive an individual settlement and service award of $6,500 in consideration of the full and general release he is providing in settlement of his claims against Defendant, which is broader than

the limited release by the Class, and for his service to the Class Members in connection with representing the Class.  (Appendix I, p.5, ¶15; p.8, ¶34).

The Individual Settlement and Service Award is an amount to be paid by Defendant separate and distinct from the settlement fund of $450,000 to be created by Defendant and to be distributed to the Class Members.  Moreover, the negotiations that resulted in the amount of the Individual Settlement and Service Award to the Plaintiff started only after an amount of compensation for the Class Members had been negotiated at arm's length.

**E.  Attorneys' Fees and Costs.**

Subject to Court approval, the parties have agreed that Defendant shall pay Plaintiff's Counsel's attorneys' fees and litigation expenses in an amount not to exceed $160,000.  (Appendix I, p.8, ¶34).  The negotiations resulting in the agreement for fees and expenses started only after an amount of compensation for the Class Members had been negotiated at arm's length.[3]

**F.  Settlement Notice.**

Within thirty (30) days of the Court's Order Directing Notice to the Class, the Settlement Administrator, as identified above, shall email an electronic version of the Short Form/Postcard Notice (Appendix I, Exhibit 3) to each Class Member using the email addresses for Class Members in Defendant's records and updated by the Settlement Administrator by reasonable methods.  If the Settlement Administrator is unable to verify receipt of the emailed Notice to a Class Member, or if the Defendant does not have an email address for a Class Member, the Settlement Administrator shall mail the Short Form/Postcard Notice to the Class Member using the last known mailing address in Defendant's records.[4]  (Appendix I, p.15, ¶3).

---

[3] *See* Manual for Complex Litigation 4th, § 21.7 (2004), *available at* http://www.fjc.gov ("Manual") ("simultaneous negotiation of class relief and attorney fees creates a potential conflict.  Separate negotiation of the class settlement before an agreement on fees is generally preferable").

[4] The Settlement Administrator will also use the NCOA database maintained by the United States Postal Service.

The Settlement Administrator shall also cause the Long Form Notice (Appendix I, Exhibit 1), the Settlement Agreement, the Complaint, the Preliminary Approval Order, and any other relevant documents to be made available on a dedicated settlement website. When available, the Settlement Administrator will make available on the settlement website Class Counsel's application for a Fee Award, application for an Incentive and Service Award to Plaintiff and the Final Approval Order. (Appendix I, p.16, ¶3(g)).

Further, the Settlement Administrator shall set up a toll-free telephone number that will provide automated information about the Settlement, the Settlement Class Members' rights, important deadlines, and instructions as to how Class Members may request and obtain hard-copy settlement documents. (Appendix I, p.16, ¶3(h)).

Finally, Defendant shall be responsible for timely compliance with any notice required by the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715 and all costs associated therefrom, separate and distinct from the Settlement Fund.

**G.  Release.**

Upon final approval of the settlement, Class Members will release claims that arise out of Defendant's acquisition of consumer reports regarding the Class Members between April 5, 2018, and April 5, 2020. (Appendix I, p.27, ¶1(c)). The Class Representative will provide a full, general release of all claims up the Effective Date of the Agreement. (Appendix I, p.27, ¶1(d)).

**IV.  ARGUMENT IN SUPPORT OF DIRECTING NOTICE TO THE CLASS**

There is a strong judicial policy favoring resolution of litigation prior to trial. *See, e.g., S.C. Nat'l Bank v. Stone*, 749 F. Supp. 1419, 1423 (D.S.C. 1990). ("The voluntary resolution of litigation through settlement is strongly favored by the courts.") (*citing Williams v. First Nat'l Bank*, 216 U.S. 582 (1910)). Settlement spares the litigants the uncertainty, delay, and expense

of a trial and appeals while simultaneously reducing the burden on judicial resources.   As the court in *Stone* observed:

> "In the class action context in particular, there is an overriding public interest in favor of settlement. Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both Parties and also reduces the strains such litigation imposes upon already scarce judicial resources."

749 F. Supp. at 1423 (quoting *Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 313 (7th Cir. 1980)); *see also* NEWBERG, § 11.41 ("By their very nature, because of the uncertainties of outcome, difficulties of proof, length of litigation, class action suits lend themselves readily to compromise.").

Where, as here, the parties propose to resolve the claims of a class through settlement, they must obtain the court's approval.  *See* Fed. R. Civ. P. 23(e)(2).  Plaintiff asks that the Court enter an Order preliminarily approving the parties' settlement and directing notice to the Class.

At this stage, the Court "must make a preliminary determination of the fairness, reasonableness, and adequacy of the settlement terms and must direct preparation of notice of the certification, proposed settlement, and date of the final fairness hearing."  MANUAL, § 21.632. Courts should grant preliminary approval and direct notice to the class if the settlement has no obvious deficiencies and falls within the range of possible judicial approval.

A party seeking to certify a class action must demonstrate that Rule 23(a)'s four prerequisites are satisfied: (1) that the proposed class is so numerous that joinder of all members is impracticable; (2) that there are questions of law or fact common to the class; (3) that the claims of the representative party are typical of the claims of the class; and (4) that the representative party will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a); *Chicago Teachers Union, Local 1 v. Board of Educ.*, 797 F.3d 426, 433 (7th Cir. 2015).

In addition to satisfying the requirements of Rule 23(a), the plaintiff must satisfy one of the subsections of Rule 23(b). Fed. R. Civ. P. 23(b); *Bell v. PNC Bank, Nat'l Assoc*., 800 F.3d 360, 373 (7th Cir. 2015). Here, Plaintiff seeks certification under Rule 23(b)(3), which requires a finding that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." *Id*.

As discussed below, the Rule 23(a) requirements – numerosity, commonality, typicality, and adequacy – are easily met. The Rule 23(b)(3) requirements of "predominance" and "superiority" are also satisfied.  The common legal issues in this case "predominate," and there will be no class-member-specific issues for the Court to decide.  Moreover, a class action is "superior" given that Defendant has allegedly violated the rights of a large number of potentially geographically diverse persons to such an extent that the costs of pursuing individual litigation is not feasible; the alternative to a class action would be either no recourse for thousands of consumers or myriad scattered lawsuits resulting in the efficient administration of litigation.

### A.  The Court Will Likely Be Able to Approve the Settlement Agreement Because It Is Fair, Reasonable and Adequate.

The decision to enter an Order that notice be given of a proposed class action settlement was previously known as "preliminary approval" of a class action settlement.  The fundamental principles governing a court's evaluation of whether a class action settlement is fair, reasonable, and adequate remain undisturbed by the 2018 amendments: "The goal of this amendment is not to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal."  Fed. R. Civ. P. 23, Advisory Committee Note on 2018 Amendment to Subdivision (e)(2).

Rule 23(e)(2) now explicitly sets forth four (4) factors for determining whether a settlement is fair, reasonable and adequate, and includes factors traditionally considered at preliminary approval:

    (i)    the class representative and class counsel have adequately represented the class;

    (ii)    the proposal was negotiated at arm's length;

    (iii)    the relief provided for the class is adequate, taking into account (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the processing of class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; (iv) any agreement required to be identified under Rule 23(e)(3); and

    (iv)    the proposal treats class members equitably relative to each other.

Fed.R.Civ.P. 23(e)(2).  *See also, In re AT&T Mobility Wireless Data Services Sales Litigation,* 270 F.R.D. 330, 345-47 (N.D. Ill. 2010).

**1.**  <u>Plaintiff and Class Counsel Have Adequately Represented the Class.</u>

Rule 23(a)(4) requires plaintiffs to show that "the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). "Adequacy of representation is composed of two parts: the adequacy of the named plaintiff's counsel, and the adequacy of representation provided in protecting the different, separate, and distinct interest of the class members." *Retired Chi. Police Ass'n.*,7 F.3d at 596 (*quoting Sec'y of Labor v. Fitzsimmons*, 805 F.2d 682, 697 (7th Cir. 1986) (*en banc*). Both prongs of the "adequacy" test are met here.

First, Mr. Leitzman has retained counsel experienced in consumer litigation, and class action cases, to prosecute his claims and those of the proposed Class. The firm of SmithMarco, P.C., has been certified to represent classes under the FCRA and several other consumer protection and privacy statutes by courts in numerous federal districts around the country.[5]

---

[5] *Ronald Lees v. Anthem Blue Cross Blue Shield*, (13-cv-01411), a TCPA case in the Eastern District of Missouri,

Furthermore, the purpose of the adequacy analysis is to identify conflicts of interest or antagonism that would implicate Plaintiff's adequacy as a class representative, neither of which is present here. Mr. Leitzman's interests are aligned with those of the Class and Plaintiff is unaware of any actual or apparent conflicts of interest between him and the Settlement Class. Accordingly, Mr. Leitzman and Class Counsel have, and will continue to, adequately represent the interests of the Class.

**2.** The Settlement Agreement is the Result of Engaged, Arms-Length Negotiations Overseen by an Experienced Mediator.

Typically, "[t]here is a presumption of fairness when a proposed class settlement, which was negotiated at arm's-length by counsel for the class, is presented for Court approval." Herbert B. Newberg & Alba Conte, NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2002) ("NEWBERG"); *see also Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) (great weight given to the recommendation of counsel who are the most closely acquainted with the facts of the litigation); *In re Employee Benefit Plans Secs. Litig.*, No. 3-92-708, 1993 WL 330595, at *5 (D. Minn. June 2, 1993) (same).

Here, not only was the Settlement reached subsequent to merits-based discovery, but it was negotiated at arm's length by counsel with extensive experience in consumer protection litigation, including class action litigation, who have a comprehensive understanding of the advantages of a

---

resulting in a class settlement of $6.25 million; *Jennifer Ossola v. American Express, et al*, (13 CV 4836), a TCPA case in the Northern District of Illinois, resulting in a class settlement of $9.25 million for two separate classes; *Sharon Crosby v. Core-Mark Distributors, Inc.*, (15-cv-04198), a Fair Credit Reporting Act case in the Northern District of Georgia, resulting in a class settlement of $494,200; *Deborah Meredith v. United Collection Bureau, Inc.* (1:16-cv-01102), a TCPA case in the Northern District of Ohio, resulting in a class settlement of $317,000; *Yvonne Mack v. Resurgent Capital Services, LP & LVNV Funding*, (1:18-cv-06300), a Fair Debt Collection Practices Act case in the Northern District of Illinois, currently on appeal; *Nicholas Der-Hacopian v. Sentrylink LLC* (8:18-cv-03001-PWG), a Fair Credit Reporting Act case in the District of Maryland, resulting in a class settlement of $178,750; *Nicholas Der-Hacopian v. DarkTrace, Inc.* (18-cv-06726-HSG), a Fair Credit Reporting Act case in the Northern District of California, resulting in class settlement of $82,500; *Deaton v. Trans Union, LLC* (2:20-cv-01380-AB), a Fair Credit Reporting Act in the Eastern District of Pennsylvania, resulting in a class settlement that provided for fundamental practice changes by TransUnion and 18 months of free credit monitoring to the class.

meaningful class-wide settlement and the risks inherent with continued litigation.  The litigation of this case proceeded to a stage at which counsel has demonstrated a thorough understanding of the complexity of the issue and the strengths and weaknesses of the claims, defenses and litigation strategies.

Furthermore, the parties engaged in private, day-long, mediation before a well-respected mediator with substantial experience mediating FCRA class-action cases, James R. Betts of Betts Mediation.  *See, Wong v. Accretive Health, Inc.,* (773) F.3d 859, 864 (7th Cir. 2014) ("Finally, and importantly, the settlement was proposed by an experienced third-party mediator after an arm's length negotiation where the parties' positions on liability and damages were extensively briefed and debated.").

The mediation resulted in a written term sheet and ultimately resulted in the Settlement Agreement, which is attached hereto as **Appendix I**.  Accordingly, the Class Settlement and Agreement were negotiated in good faith and free of collusion.

    **3.**   The Settlement Provides Substantial Relief for Settlement Class Members.

Under the FCRA, a prevailing plaintiff may obtain, *inter alia*, actual damages or between $100 and $1,000 in statutory damages.  15 U.S.C. § 1681n(a)(1)(A).  But liability under the FCRA is not strict and only arises upon a finding of negligence or willful failure to comply. 15 U.S.C. §§ 1681n and 1681o. Unless there is a finding of willful noncompliance,[6] Plaintiff (and thus the Class) must establish actual damages. Consequently, absent approval of the settlement,

---

[6]  The Supreme Court considered the standard for whether a defendant "willfully" violates the FCRA in *Safeco Insurance Co. of America v. Burr*, 551 U.S. 47, 69 (2007), including whether willfulness also includes "recklessness." *Id.* at 52.  While it held that the former encompassed the latter, the Court also concluded that this willfulness standard is not met "unless the action is not only a violation [of the FCRA] under a reasonable reading of the statute's terms but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.* at 69.  To overcome this hurdle, it is the plaintiff's burden to prove that a defendant's attempts to comply with the FCRA were "objectively unreasonable." *Id.*

Plaintiff will be put to challenging proofs, including as to issues of willfulness, and all parties face the prospect of long and expensive litigation that will likely culminate in a trial on a class-wide basis and, thereafter, a lengthy appeal (not to mention the likelihood of a requested interlocutory appeal relating to class certification under Rule 23(f)).

The settlement in this case resulted in*, inter alia*, Defendant agreeing to create a settlement fund of $450,000, which shall solely be used to pay the 2,582 Settlement Class Members, and without the need for Class Members to submit a claim.  Assuming no opt outs, each Class Member will recover approximately $175.00.  This settlement payment is both adequate and reasonable in light of the nature of the claim, the inherent difficulty in establishing willfulness, which is necessary to recover statutory damages, and given the limited release that the Class Members are providing, i.e., a claim under FCRA, Section 1681b and state law equivalents.

**4.**   <u>The Settlement Agreement is a Preferable Alternative to the Risks Each Party Would Face Through Continued Litigation.</u>

Plaintiff and Class Counsel recognize the expense and length of time required to continue to litigate this case, including the time and expense associated with litigating this case against Defendant through trial and through possible appeals, which could take several more years.  *See, Schulte v. Fifth Third Bank*, 805 F.Supp.2d 560, 586-87 (N.D. Ill. 2011), citing to *Synfuel Techs., Inc. v. DHL Express (USA), Inc.,* 463 F.3d 646, 653 (7th Cir.2006) ("The Seventh Circuit has held that the likely complexity, length, and expense of continued litigation are relevant factors in determining whether a class-action settlement is fair, reasonable, and adequate.").  *See also, In re Motorsports Merchandise Antitrust Litigation,* 112 F. Supp. 2d 1329, 1333-34 (N.D. Ga. 2000) (determining settlement was within reasonable range where outcome of case was uncertain and could be tied up in the appellate process for years).

Counsel has also considered the time already invested in this case. The Class Representative and Class Counsel believe that the Settlement confers a substantial immediate benefit upon the Class. *In re Motorsports*, 112 F. Supp. 2d at 1334 ("The settlements are a positive alternative to the prospect of receiving no recovery and are in the best interest of the settlement class. The complexities of this case, together with the unpredictability of a lengthy trial and appellate process weigh heavily in favor of approving the settlements.").

As set forth in further detail below, Plaintiff is confident that if the case were to continue to be litigated, he would be successful in certifying the proposed Settlement Class on contest. Plaintiff anticipates, however, that Defendant would raise procedural and substantive opposition to the certification of any class, including through the vehicle of appellate review pursuant to Fed. R. Civ. P. 23(f).

Even if Plaintiff succeeded in certifying a class, he would still face the task of proving liability on the merits of his claims, including the risks associated with a possible motion for summary judgment, and the even greater risks, uncertainty, delay, and expense of trial. Even if Plaintiff succeeded in passing the liability hurdle, the parties would continue to battle over whether Plaintiff and other Class Members have sustained damages, and if so, the proper measure of those damages. The battles would be fought not only before and at trial, but also on appeal.

By contrast, the proposed Settlement provides significant benefits to the Settlement Class without the risks set out above.

**5.** <u>The Proposed Award of Attorney's Fees Is Fair and Reasonable.</u>

If the Court orders that notice be directed to the Settlement Class, Plaintiff's counsel will request that the Court award attorneys' fees and litigation expenses in the amount of $160,000.00, which represents approximately 25% of the total settlement amount. This amount was negotiated

only after the substantive terms of the Settlement and the amount of the Settlement Fund to be distributed to Class Members were agreed upon.

Prior to the hearing to consider final approval, Class Counsel will file a separate motion for an award of attorneys' fees and costs, addressing in detail the facts and law supporting the fee request. This motion will be filed fourteen (14) days prior to the deadline for Class Members to submit objections to the Agreement, allowing them to comment on any perceived problems with the request.

### 6. The Method of Providing Relief Will be Effective.

All Class Members who do not opt out shall receive an automatic pro rata share of the settlement fund of $450,000, without having to submit a claim to receive payment. Class Members will be given an opportunity to update their contact information, including mailing address, with the Settlement Administrator to ensure that settlement checks reach all Class Members.

### 7. The Settlement Treats All Settlement Class Members Fairly.

The proposed Settlement Agreement here treats all Class Members fairly. The Advisory Committee Note to the 2018 amendments to Rule 23(e)(2) indicates that an analysis regarding the fair treatment of class members looks to "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief."

The Agreement here follows this guidance, because it identifies individuals based upon Defendant's records that were the subject to an account review (i.e., the procurement of a consumer report relative to an account) of an account that was discharged in bankruptcy and for which the security interest pertaining to the account had been regained by Defendant and each individual (i.e., Class Member) shall receive the same amount from the Settlement Fund.

By providing an equal benefit to all Settlement Class Members, the negotiated Settlement Agreement treats Class Members fairly with respect to one another.

### B. The Class Meets the Requirements for Rule 23(a) for Certification.

The U.S. Supreme Court has noted that "[c]lass actions serve an important function in our system of civil justice." *Gulf Oil Co. v. Barnard*, 452 U.S. 89, 99 (1981).  For a suit to be maintained as a class action under Rule 23, a plaintiff must allege facts establishing each of the four threshold requirements:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

See *Uhl v. Thoroughbred Tech. & Telecomms., Inc.,* 309 F.3d 978, 985 (7th Cir. 2002).  A plaintiff must also allege that this action qualifies for class treatment under at least one of the subdivisions of Rule 23(b).  *See Williams v. Chartwell Fin. Servs., Ltd.,* 204 F.3d 748, 760 (7th Cir. 2000).

Under Rule 23(b)(3), at issue here, a class action will be appropriate where "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

Class certification is appropriate when all of the elements of Rule 23(a), and one of the elements of Rule 23(b), have been satisfied, *see, Amchem Products*, 521 U.S. at 613-614 (1997); *Keele*, 149 F.3d at 594; *Bernal v. NRA Group, LLC*, 318 F.R.D. 64, 69 (N.D. Ill. 2016); and *Taylor v. Alltran Financial, LP et al*, 2018 WL 4403335 at 2 (S.D. Indiana, 2018).

Class actions serve an important purpose in modern civil litigation.  As the Seventh Circuit has explained:

The class action is an ingenious procedural innovation that enables persons who have suffered a wrongful injury, but are too numerous for joinder of their claims alleging the same wrong committed by the same defendant or defendants to be feasible, to obtain relief as a group, a class as it is called.  The device is especially important when each claim is too small to justify the expense of a separate suit, so that without a class action there would be no relief, however meritorious the claims.

*Eubank v. Pella Corp.*, 753 F.3d 718, 719 (7th Cir. 2014).

For the reasons delineated below, this action satisfies the requirements of Rule 23(a) and (b)(3).  This matter meets the requirements for class certification pursuant to Rule 23(b)(3), because questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy, *see* e.g., *Bernal* at 75-77; *Taylor* 2018 WL 4403335 at 2; and *Jackson v. National Action Financial Services*, 227 F.R.D. 284, 290 (N.D. Ill., 2005).

### 1.   The Settlement Class is Sufficiently Numerous.

A proposed class must be so numerous that joinder of all members is impracticable, see e.g., *Bernal* at 73; *Taylor* at 3; and *Jackson* at 287.

Rule 23 (a)(1) does not require that joinder be impossible; rather, joinder of all members is impracticable if factors such as judicial economy, ability of class members to bring individual suits, and inefficiencies of relitigating core issues indicate that individual treatment would cause procedural problems.  *Healey v. Int'l Broth. of Elec. Workers, Local Union No. 134*, 296 F.R.D. 587, 593 (N.D. Ill. 2013).  When the class is large, "numbers alone are dispositive" of numerosity. *Riordan v. Smith Barney*, 113 F.R.D. 60, 62 (N.D. Ill. 1986).  A class action may proceed upon estimates as to the size of the proposed class.

Although there is no "bright line" test for numerosity, a class of forty is generally sufficient to satisfy Rule 23(a)(1).  See *Healey*, 296 F.R.D. at 592; *Bernal* at 73, *citing, Swanson v. Am.*

*Consumer Indus., Inc.*, 415 F.2d 1326, 1333 n. 9 (7th Cir, 1969) and *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 356, n.5 (3rd Cir. 2013).

In the present case, numerosity is easily satisfied for the proposed class.  Discovery has revealed that 2,582 of Defendant's customers meet the class definition, i.e., that Defendant obtained a consumer report pertaining to a consumer after that consumer had obtained a bankruptcy discharge of any secured obligation such consumer owed to Defendant and after Defendant had regained legal possession of the real property securing such obligation.

**2.**   There are Questions of Law and Fact That Are Common to the Class.

To satisfy Rule 23(a)(2), there must be "questions of law or fact common to the class." Satisfaction of the commonality requirement requires that plaintiffs demonstrate that their claims "depend upon a common contention," the resolution of which "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 351. "Rule 23 does not demand that every issue be common" – classes are routinely certified even when there is a diversity of factual circumstances underlying individual class members' claims. *Kleen Products LLC v. Int'l Paper Co.*, 831 F.3d 919, 922 (7th Cir. 2016); *Pietrzycki v. Heights Tower Serv., Inc.*, 197 F. Supp. 3d 1007, 1019 (N.D. Ill. 2016).

Courts generally find a wide variety of claims may be established by common proof in cases involving standardized procedures or practices. *See, e.g., id.* at 1022 (claims based upon alleged practice and course of conduct used for all class members are appropriate for class treatment).  In the present case, Plaintiff's claims arise from a common contention that is "capable of class-wide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *See, Wal-Mart Stores, Inc., v. Dukes,* 564 U.S. 338, 350 (2011).

Here, there exists core common legal and factual issues that can be resolved through common methods of proof. Defendant obtained a consumer report for each Class Member after that Class Member had obtained a bankruptcy discharge of the secured obligation that served as the putative predicate for the account review (i.e., the permissible purpose to procure a consumer report), and after Defendant had regained legal possession of the real property securing the obligation.

### 3.   Plaintiff's Claim is Typical of the Claims of the Class.

To satisfy typicality, "there must be enough congruence between the named representative's claim and that of the unnamed members of the class to justify allowing the named party to litigate on behalf of the group." *Spano v. The Boeing Co.,* 633 F.3d 574, 586 (7th Cir. 2011)

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "[T]he typicality requirement primarily directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large." *Retired Chi. Police Ass'n v. City of Chi.*, 7 F.3d 584, 596-97 (7th Cir. 1993).  In general, a claim "is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and based on the same legal theory." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006).

The threshold for establishing typicality is low: "Although "[t]he typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members," the requirement "primarily directs the trial court to focus on whether the named representatives' claims have the same essential characteristics as the claims of

the class at large." *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009), *quoting De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983).

Here, Mr. Leitzman's FCRA claim is entirely typical of the claims of the Class Members, and involves the exact same conduct by Defendant, namely that it impermissibly procured a consumer report about him even though he had received a bankruptcy discharge of the secured obligation that served as the predicate for the account review and after Defendant had regained legal possession of the real property securing the obligation. Because Plaintiff's claim rests on the same legal and factual issues as that of the Settlement Class Members, typicality is satisfied.

**4.** <u>Plaintiff and Plaintiff's Counsel Will Fairly and Adequately Represent and Protect the Interests of the Class.</u>

To satisfy the adequacy of representation requirement, the class representative must possess the same interests as the class members and not have antagonistic or conflicting claims or interests. *Amchem Prods., Inc., v. Windsor,* 521 U.S. 591, 625-26 (1997); *Rosario v. Livaditis,* 963 F.2d 1013, 1018 (7th Cir. 1992). The inquiry as to adequacy also requires discerning the adequacy of class counsel. *Gomez v. St. Vincent Health, Inc.,* 649 F.3d 583, 592 (7th Cir. 2011).

As to the Class Representative, Plaintiff is intimately familiar with the facts underlying this matter and has actively participated in the prosecution of this case. He actively assisted Class Counsel in investigating the claims and preparing the pleadings. He understands his obligation to represent the class and there is no indication that Mr. Leitzman has any conflict with any Class Member. As to Class Counsel, Plaintiff has retained SmithMarco, P.C., a consumer rights litigation law firm that has been found to be well-qualified to represent consumer classes and has been certified as class counsel in multiple federal districts, as noted, *supra.*

Given the foregoing Plaintiff and his counsel will adequately protect and serve the interests of the Class.

### C.  **The Class Meets the Requirements for Rule 23(b) for Certification.**

Plaintiff seeks certification of a Rule 23(b)(3) class.  An action is properly maintained as a class action, pursuant to Rule 23(b)(3), where the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

### 1.  Common Questions of Law and Fact Predominate Over Individual Ones.

"Common issues of fact and law predominate in particular when adjudication of questions of liability common to the class will achieve economies of time and expense." *Chicago Teachers Union*, 797 F.3d at 444. The plaintiff need only show that key questions of law or fact are susceptible to common proof but need not demonstrate that these questions will be answered on the merits in favor of the class. *Id.* (*citing Amgen Inc. v. Conn. Retirement Plans and Trust Funds*, 568 U.S. 455, 468, 133 S. Ct. 1184, 1196 (2013)).  Common issues are more likely to predominate in a class action seeking only damages fixed by statute. *See Gillespie v. Equifax Info. Servs., LLC*, No. 05-cv-138, 2008 WL 4614327, at *7 (N.D. Ill. 2008) (certifying FCRA class action for statutory damages, finding that the predominant common issue was whether the defendant's standardized practice constituted a knowing or reckless disregard for statutory obligations); *Cavin v. Home Loan Ctr., Inc.*, 236 F.R.D. 387, 392 (N.D. Ill. 2006) (certifying a class under the FCRA and rejecting defendant's argument that damages were an individual issue as "a nonstarter" because the class sought only statutory damages, and class members with actual damages could opt out); *Murray v. New Cingular Wireless Services, Inc.*, 232 F.R.D. 295, 302 (N.D. Ill. 2005) (certifying a class under the FCRA and noting "since the class is requesting statutory as opposed to actual damages, the existence of individual damages is not a barrier to class certification").

Defendant's liability to each Class member is based on the same legal theory and the same factual situation, namely the procurement of a consumer report without a permissible purpose, the permissible purpose having been extinguished because of the consumer's bankruptcy discharge of any secured obligation such consumer owed to Defendant and after Defendant regained legal possession of the real property securing such obligation.

**2.**   A Class Action is the Superior Method for Resolving Class Members' Claims.

In addition to finding the predominance of common questions, Rule 23(b)(3) also requires that the Court determine that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

The relevant factors for this analysis are: "(1) 'class members' interests in individually controlling the prosecution or defense of separate actions;' (2) 'the extent and nature of any litigation concerning the controversy already begun by or against class members;' (3) 'the desirability or undesirability of concentrating the litigation of the claims in the particular forum;" and (4) 'the likely difficulties in managing a class action.'" *Pietrzycki*, 197 F. Supp. 3d at 1025 (quoting Fed. R. Civ. P. 23(b)(3)(A)-(D)).

Furthermore, it has been widely recognized that a class action is superior to other available methods – particularly, individual lawsuits – for the fair and efficient adjudication of a suit that affects a large number of persons injured by violations of consumer protection laws or common law. *McCabe v. Crawford & Co.*, 210 F.R.D. 631, 645 (N.D. Ill. 2002) (*citing Haynes v. Logan Furniture Mart*, 503 F.3d 1161, 1165 (7th Cir. 1974)). *See also In re Prudential Ins. Co. Am. Sales Practice Litig.*, 148 F.3d 283, 316 (3d Cir. 1998). Consumer class actions such as the case at bar easily satisfy the superiority requirement of Rule 23.

The superiority requirement of Rule 23(b)(3) is satisfied here.  Defendant has violated the rights of a large number of potentially geographically dispersed persons to such an extent that the cost of pursuing individual litigation to seek recovery is not feasible. Thus, the alternatives to a class action are either no recourse for thousands of consumers, or even in the unlikely event that they all become aware of their rights and could locate counsel, a multiplicity of scattered suits resulting in the inefficient administration of litigation. Accordingly, a class action is superior to other available methods for the fair and efficient adjudication of this matter.

There is no question that this class action would be manageable. This case presents no manageability difficulties that would preclude class certification. Further, a class action is the superior method of vindicating the rights of hundreds of geographically dispersed persons. FCRA statutory damages are $100 - $1,000 and the cost of pursuing individual litigation to seek recovery against a well-financed adversary is not feasible for most Class members here. The alternative is no relief at all; a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

### D. <u>The Effectiveness of the Proposed Notice.</u>

Rule 23(e)(1) states that "[t]she court must direct notice in a reasonable manner to all class members who would be bound by" a proposed settlement, voluntary dismissal, or compromise. Settlement Class members are entitled to the "best notice that is practicable under the circumstances" of any proposed settlement before it is finally approved by the Court. Fed. R. Civ. P. 23(c)(2)(B). The amendments to Rule 23(c)(2)(B) provide that "notice may be by one or more of the following: United States mail, electronic means, or other appropriate means." To comply with due process, notice must be "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Amchem Prods.*

*v. Windsor*, 521 U.S. at 617.  The notice must state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).  *See* Fed. R. Civ. P. 23(c)(2)(B).

The proposed notice plan here complies with these requirements, as delineated*, supra.* It provides for individual notice to be sent to each Class Member identified in Defendant's business records.  The language of the proposed notice is plain and easily understood, providing neutral and objective information about the nature of the settlement. The notice includes the definition of the Class, a statement of each Class Member's rights (including the right to opt-out of the Settlement or object to it, and the deadline to do so), a statement of the consequences of remaining in the Settlement, an explanation of how members can exclude themselves from the Class or object to the Settlement, and methods for obtaining more information, including directions to log on to a dedicated settlement website.

Plaintiff submits that the notice program outlined in the Settlement Agreement is the best practicable notice under the circumstances of this case, and will be highly effective.

**E.  <u>Scheduling a Final Approval Hearing is Appropriate.</u>**

After notice is given to Class Members of the terms of the proposed Settlement and they have an opportunity to object or opt out, the final step in the settlement approval process is a Final Approval Hearing at which the Court may hear all evidence and argument necessary to make its settlement evaluation. Proponents of the Settlement Agreement may explain the terms and conditions of the Settlement Agreement, and offer argument in support of final approval. The

Court will determine after the Final Approval Hearing whether the Settlement Agreement should be approved, and whether to enter a final order and judgment under Rule 23(e).

Plaintiff requests that the Court set a date for a hearing on final approval at the Court's convenience, but no earlier than 90 days after entry of an order directing notice to the Settlement Class.

## V.   **CONCLUSION**

The settlement is an excellent result considering the nature of the litigation and the amount of the recovery negotiated for each of the Class Members without having to submit a claim.  The terms of the settlement, in addition to the circumstances surrounding negotiations and its elimination of further costs caused by litigating this case through trial and appeal, satisfy the strictures for preliminary approval and the entry of an Order directing notice to the Class.

For the foregoing reasons, Plaintiff respectfully requests that this Court: (1) find that it will likely be able to approve the proposed Settlement under Fed. R. Civ. P. 23(e)(2) and certify the proposed Settlement Class for purposes of judgment on the Settlement; (2) approve the form, content, and method of delivering notice to the Class as set out in the Settlement Agreement; and, (3) schedule a formal Final Approval Hearing regarding the Settlement Agreement at the Court's convenience, but no earlier than 90 days after entry of any order directing notice to the Settlement Class.

Respectfully submitted,
**CODY LEITZMAN, individually and
on behalf of all other similarly situated.**

By: ___ s/ David M. Marco _____
Attorney for Plaintiff

Dated: May 9, 2022

David M. Marco
IL Bar No. 6273315/FL Bar No. 125266
SMITHMARCO, P.C.
55 W. Monroe Street, Suite 1200
Chicago, IL 60603
Telephone:   (312) 546-6539
Facsimile:   (888) 418-1277
E-Mail:      dmarco@smithmarco.com